(Licking County Probate Court.)
September 24, 1900.

IN RE REV. JAMES J. MULLANEY, HABEAS CORPUS.

---

(1). A party convicted of a technical assault was sentenced to "pay a fine of $5.00 and costs." An execution, issued to collect the fine and costs, was levied on the body of the defendant, and he was imprisoned for non-payment. He applied to the probate court for a writ of habeas corpus to secure his discharge; Held: Where it is intended that the defendant should be imprisoned until the fine and costs are paid, the court must add, as provided in sec. 7327, R. S., that, he should remain confined in the jail until the fine and costs are paid, or secured to be paid, "or he be otherwise legally discharged." The court not having done so in this case, there was no authority for the confinement of the defendant.

(2). The sentence ordering confinement until fine and costs are paid, must also add "or until he be otherwise legally discharged." Without such addition the sentence would not be lawful.

(3). Even where the sentence orders the defendant to be confined until fine and costs are paid, yet, when it clearly appears that he is unable to pay or secure payment, it is the duty of the county auditor, on application, to discharge the defendant.

(4). Where the judgment against an offender does not order imprisonment, and he is confined on an execution levied upon his body, it is the duty of the commissioner of insolvents, at his request, to act promptly, to relieve himself from responsibility.

(5). It is no excuse for the neglect or refusal of the county auditor to discharge the defendant in such case, that the latter has friends or relations who are able and should be willing to pay. (See to same effect, In re Moore, 14 C. C., 237.)

(6). The refusal of the county auditor to discharge the defendant is not a judicial determination ousting a court of jurisdiction in the matter.

(7). The decision of one court upon a writ of habeas corpus refusing to discharge a prisoner, is not a bar to the issuing by another court or judge of another writ.

(8). Where a fine is imposed by the court, the imposition of such fine results in making payment of the costs a part of the sentence.

---

WALDO TAYLOR, J.

The relator, Rev. James J. Mullaney, at the April term, 1900, of the court of common pleas, of this county, having waived a jury, submitted his case to the court, and was tried by the court and found guilty technically of committing an assault. He came before the court for his sentence, it was considered by the court that, "He pay a fine of $5.00 to the state of Ohio, and the costs of this proceeding" Such is the judgment and sentence of the court, and no further order is made in the case. The fine of $5.00 assessed against him and the costs of prosecution all remain unpaid Upon the judgment an execution has been issued to make the fine and

costs of prosecution to be levied on the property, or in default, upon the body of the relator, Rev. James J. Mullaney. Section 6823 provides, "Whoever unlawfully assaults another shall be fined not more than $200, or imprisoned not more than six months, or both." This is the section under which Mullaney was found guilty and sentenced to pay a fine of $5.00. The court did not order or direct him to be imprisoned. Had the court ordered that he shall remain confined until the fine and costs are paid. it would be equivalent to a life sentence, and illegal. For the court has no such authority or power. If imprisonment is imposed as part of sentence, it is the duty of the court to add, "That he remain confined in the county jail until the fine and costs are paid, or secured to be paid, or he be otherwise legally discharged." In case the court leave out these words. "or secured to be paid, or he be otherwise legally discharged." the sentence would be illegal. These words "or secured to be paid or be otherwise legally discharged" are not in the record or made a part of the judgment. The defendant does not have to pay the fine and costs. He may secure them to be paid at some future time to be agreed upon. Section 7327 provides, "When a fine is the who e or part of a sentence, the court may order that the person sentenced shall remain confined in the county jail until the fine and costs are paid, or secured to be paid, or the offender is otherwise legally discharged." This section was wholly ignored by the action of the auditor. and under this execution, he would be doomed to a life sentence with no hope for relief, unless the remedy applied for, that of habeas corpus, is granted. Even though he had been sentenced to "remain confined in the jail until the fine and costs are paid, or secured to be paid. or is otherwise legally discharged," he was even then entitled to the relief asked for and the auditor should have discharged him. for he had clearly established he was unable to pay or secure payment. The auditor having refused to discharge, he very properly applied for habeas corpus.

Section 1846 also provides. "When a fine is the whcle or a part of a sentence, the court, mayor or president of the board of trustees, may order that the person sentenced shall remain confined in the county jail, workhouse or prison, until the fine and costs be paid. or secured to be paid, or the offender be otherwise legally discharged." The court did not inflict any imprisonment or order that he should be committed until the fine and costs be paid. The court, having made imprisonment no part of its sentence, can any one else do what the court did not do? We think not, and evidently the court did not intend to imprison him for a mere technical assault. No one can add to the sentence pronounced by the court. He was still in the custody of the sheriff, imprisoned in the ja'l of this county, until this writ was issued for his release, a minister, indigent, without means; a family, wife and three children, with no prospect of aid, and no means of any kind whatever to discharge this fine and costs assessed by the court against him, or of securing it to be paid. This being the case he was entitled to be discharged and at once.

Sections 7328 and 7329 do not then apply to this case, as there was nothing in the sentence of the court to authorize the issuance of an execution to be levied upon the body of the defendant. The judgment. decree, finding or sentence, which ever you may see fit to technically call it, does not provide for imprisonment. It was therefore the duty of the commissioner of insolvents to have promptly acted in this case when applied to. as the evidence established in the hearing of this case, that he was not to be imprisoned. For section 6361 provides, "Any person who may be imprisoned under any process for any fine, penalty, or costs, in any criminal proceeding, shall be entitled to the benefit of this section, at any time, unless the judgment in the case requires imprisonment till the fine, penalt, or cost be paid,' or be secured to be paid.

As the judgment in this case against the relator did not require imprisonment there is no excuse for the commissioner refusing to act. It was his duty to have acted and the court would have passed on his proceedings as to their regularity. The commissioner would thereby have been relieved from all responsibility. Under section 1028, which reads as follows:

"The auditor may discharge from imprisonment, any person who is confined in the county jail for the non-payment of any fine or amercement due the county, except fines for contempt of court or some officers of the law, when it is made clearly to appear to him that such fine or amercement cannot be collected by such imprisonment."

On the 21st day of August, 1900, or immediately before that date, this petition made application to the auditor of this county, seeking discharge from imprisonment under the provisions of section 1028 of the Revised Statutes. Upon that application, such representations were made by him as that the auditor found that it is clear that the fine and costs imposed by the court cannot be collected from him personally, and that a refusal to discharge until this penalty is paid, in no wise will render collection from the petitioner probable or possible.

Conceding this, the auditor refused to discharge him with the remark "that the petitioner had friends or relations who are able and should be willing to help him in this emergency." This action of the auditor is equivalent to a suspension of the law of the land. If this is the construction to be placed upon section 1028 then the auditor is and would be an autocrat or an imperialist with unlimited power. But this is not the correct construction to be given this section. Inasmuch as the auditor has given section 1028 such construction. The relator still has a remedy which no human power can interfere with. For artice 1, section 8, or the constitution of Ohio provides, "The privilege of the writ of habeas corpus shall not be suspended, unless in cases of rebellion or invasion, the public safety require it." And the same article, section 9, provides, "All persons shall be bailable by sufficient sureties, except for capital offenses where the proof is evident, or the presumption is great. Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted."

To keep this relator, Mullaney, in a jail because he could not pay a fine and costs would be "Cruel and unusual punishment inflicted." In the exercise of this power by a single judge, or a court, every case of unlawful imprisonment may be reached and examined into. No matter where or how the chains of captivity were forged, the power of the judiciary, in this state, is adequate to crumble them to the dust, if an individual is deprived of his liberty, contrary to the law of the land.

Article 1, section 9, further provides: "All courts shall be open, and every person, for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law; and justice administered without denial or delay."

To keep this man in jail because he is poor and because his friends or congregation might be driven to pay because of their sympathy is, and would be ' cruel and unusual punishment inflicted." It would be an attempt to extort the fine and cost by a denial of justice and a delay to force the collection. Such action is in conflict with the constitution of Ohio. It is in direct opposition to article 1, sections 1, 8, 9, 16 and 18. Section 18 of article 1 provides: "No power of suspending laws shall ever be exercised, except by the general assembly."

There can be no question, but the action of the auditor is in conflict with this section. No difference how the law reads, any portion of the law conferring discretionary power upon a non-judicial officer is utterly void. It certainly was not the purpose or intention of the leg-

islature to confer any such authority upon the auditor, if so, the legislature itself, does not have or possess any right or authority to confer such power.

Under the constitution of 1802, article 8, section 9, the phraseology of the language used is but slightly different from the constitution of 1852. Section 9 reads: That no power of suspending laws shall be exercised, unless by the legislature."

It was decided in 6 Ohio St., page 55, "The privilege of the writ of habeas corpus is secured to every citizen by the national and state constitutions, and can only be suspended or withheld, in case of rebellion or invasion, when the public safety may require it.

2  The state courts and judges have jurisdiction to hear and determine all questions of imprisonment, without regard to the power which imposes it, or the process by which the captive is held. Any law providing for perpetual and continuous imprisonment would be in conflict with justice, equity and humanity, as well as the federal and state constitutions.

Justice to the taxpayers and people demand that imprisonment should cease at some definite time. How long the auditor wills this to continue, or by what measurement of time its period is to be computed, he does not say. It is, however, certain, that whatever remedy the petitioner may have hope for, under section 1028, is for the present time, at least, exhausted. And though relator is not estopped from again appealing to the officer when the auditor may feel less like Brutus and more like the Divine Master, he institutes this proceeding in habeas corpus that inquiry be made as to the cause of his restraint and detention. When it is made clearly to appear to him that a fine or amercement can not be collected by imprisonment, the auditor of the county may discharge from imprisonment any person who is confined in the jail, for non-payment for such fine or amercement. It is not the province of the auditor to discharge one prisoner on an affidavit exactly like the one presented by the relator and then rare back upon his discretionary dignity and deny it to another. That will not do. It would at least put him in the position to be charged with partiality, wrong and injustice. This I would not believe of the auditor, for I know him to be a painstaking, conscientious, honest and efficient officer. We hold it is the duty of the auditor to act, and it is specially enjoined upon him, resulting from his position and office, upon the existence of certain facts to discharge the applicant. The very object and purpose of this provision is to give immediate and prompt relief; because the highest rights of the citizen are involved. When the auditor es

that longer restraint is futile, he should set at liberty the person so imprisoned. Otherwise it will be cruel an oppressive. When the auditor refused to act, the only remedy is the writ of habeas corpus, which was issued.

In this case no motion for a new trial was made. Prosecution of error cannot be resorted to in this case. He filed his affidavit and applicaton for the purpose of convincing the only authority whose attention he could call to the subject, the county auditor, that further compliance upon his part is not necessary to establish the fact that it is within his power to perform the further penalty inflicted. In an instance like this, error can offer no remedy and the law does not drive a man to do an idle thing. So here is a citizen in jail for life, or at the will of a fellow citizen who fills a public office, for this sentence—as the California courts would call it, is "A coin sentence"—he is there until he pays. If this position can be maintained, then imperialism and arbitrary power can be established in this country. The imprisonment which he is now undergoing is no longer a penalty. It is punishment for a crime, or technically committing an assault; it is the means used to compel him to acquit himself of the balance of the sentence, viz.: To pay the fine and the costs which the auditor says he cannot do, and has no prospect of being able to do. The law-making power never intended a man to be placed in a situation like this, and the law does not accord to a citizen a right without the means of securing it to him. The statute says, that when it comes to pronouncing judgment the court shall pronounce the judgment provided by law. When the court seeks to enforce a penalty by commitment, the conditions of release are here laid down, and the defendant has the right no to any one of these conditions alone, but to all of them. There was no order that he be committed to the jail or that he stand committed until fine and costs were paid. The omission to so pronounce was equivalent to saying the court did not intend any imprisonment. The law provides for imprisonment, but the court must make it a part of the judgment of the court and it cannot be supplied by the prosecuting attorney directing an execution to issue for the body of the defendant for he had no such right or authority in law unless it was made a part of the judgment of the court, and there was no such judgment or record of the kind.

The auditor says he will not discharge defendant because some of his friends are able to help him, and may at some indefinite period do so. His friends might, if they saw fit, secure the payment of this fine and costs, but they are not bound to do so. The import and meaning of a judgment is determined by the light which the record affords. You must look to the record for its terms. A sentence in a criminal case must be so complete as that the offender, while suffering the penalty of the law, may still have preserved to him any contemplated rights or conditions. It must be so complete as to need no construction of a court to ascertain its import. It must be so complete, as that he may not have to look between the lines for its meaning, and it cannot be supplemented or supplied by a nonjudicial or ministerial office. In other words, a man who is compelled to have a law suit to get into jail, ought not, by reason of uncertainty of his sentence, be compelled to have another lawsuit to get out.

It may. or might be the fine was not adequate to the gravity of his offense; but the court who heard the testimony, and who knew the facts, has placed that point beyond controversy; but whatever be a man's merits, or demerits. his punishment must be always legal, and when not so. a crime, however unintentional, is being committed in the name of the law against every citizen, because if one man can be thus imprisoned, so can another, and no one can say whose turn will come next.

I also quote the syllabus in 22 Ohio St., page 405: "The terms of a sentence of imprisonment ought to be so definite and certain, as to advise the prisoner and the officer charged with the execution of the sentence of the time of its commencement and termination, without being required to inspect the records of any other court or the record of any other case."

There arose and it was argued that this court did not have jurisdiction in this matter as it had been judicially determined. To be a judicial settlement the question decided must arise in a judicial proceeding properly before a court of competent jurisdicton. The auditor possesses no such power. When it was established these costs could not be collected from this relator, then the auditor should have acted and granted the relief asked. The division of the power of the state into legislative. executive and judicial and the confiding of these powers to distinct departments is fundamental. It is essential to the harmonious working of this system that neither of these departments should encroach on the powers of the other. If the judiciary were to assume to decide hypothetical questions of the law not involved in a judicial proceedings in a case before it, even though the decision "would be of great value to the general assembly" in the discharge of its duties, it would, nevertheless, be an unwarranted interference with the functions of the legisla-

tive department that would be unauthorized and dangerous in its tendency. Not only this, but it would be an attempt to settle questions of law involving the rights of persons without parties before it, or a cause to be decided in due course of law, thus violating that provision of the bill of rights which declares tl at every person shall have a remedy for an injury done him by due course of law. Const., article 1, section 16.

Now it was said and was argued by counsel, that this relator had no relief except to pay, and that this was equivalent to a second application to a court for discharge from this imprisonment, while the facts were the same. We have given this and other questions raised and involved, careful consideration, and have examined a great many authorities bearing upon it, and we find that by a great weight of authorities, both in England and throughout the states of this country, it has been determined that the decision of one court or officer upon a writ of habeas corpus refusing to discharge a prisoner, is not a bar to the issuing by another court or judge of another writ, based upon the same facts. Among other cases in which this is held, we cite King v. McLean, 64 Federal Rep., 331, and many other authorities is here referred to.

I read from the case of In re Snell, 31 Minn., 110: Upon the general question involved in this proposition, there is some difference among courts and text writers. But research and reflection have brought us to the conclusion that the sound rule and that suggested by a great weight of long standing authority, is that the decision upon habeas corpus of one court or officer refusing to discharge a prisoner upon the same state of facts as at first, to another court or officer, and to a hearing or a discharge thereupon does not bar another, the issuing of a second writ by another court or officer. Peoplev. Brady, 56 N.Y., 182.

A decision under the writ of habeas corpus, refusing the discharge of a prisoner, is no bar to the issuing of any number of other successive writs by any court having jurisdiction.

Ex parte Kaine 13 Blatch, 1-5.

In some courts there appears to be a disposition to make the right to a second writ a question of expediency for the court to determine. This occurs to us to be a dangerous notion. The "Writ of Liberty" is a writ of right. When we consider its origin, its history and its purposes, the transcendent necessity of its issuance, dependent upon the right of the petitioner and not upon the discretion of anybody, is incontestable.

It may be argued that to allow the issue of successive writs will be intolerable and oppressive to the courts and to the public law officers. To this there are several answers: First, business of this kind is ordinarily controlled and conducted by an honorable profession. Second, experience is to the contrary. We may rest with comfortable assurance upon the fact that, after many years trial in this country and centuries of trial in England, the right to successive writs has not been found to work any serious practical inconvenience. Third, if the inconveniences were great, the citizens right to liberty is greater.

What I have read answers the objections made in the course of argument before us, to the rule that repeated applications may be made to different courts or judges.

We think therefore, upon careful consideration of these authorities, that what has been set forth in the answers as res judicata does not amount to a good plea in bar, and does not stand in the way of our proceeding to act upon this application; neither does it afford us just ground for refusing to act.

We come, therefore to the consideration of the question whether this imprisonment to enforce the collection of these costs under this form of judgment is lawful. Unquestionably clear authority to imprison to force the collection of a debt of any description must be found in the law; otherwise such imprisonment will be unlawful. All the property of this defendant was exempt from this execution. This was well known by everybody. Then there could be no purpose in taking his body except to disgrace him or drive his friends to relieve him. This is unquestionably wrong.

It is equally clear that if the court in this case was authorized to enter judgment, that this defendant should be imprisoned and did not, then, no other person can so decide for the court. In the absence of such judgment, an execution such as was issued in this case was wrong.

Now we cannot think these provisions which seem plainly to limit the right to the use of such writ, known as a capias ad satisfaciendum, are accidental. We have no doubt but that it is competent for the legislature to provide that a person may be arrested on execution and imprisoned as a part of the process for collecting costs only. I mean in cases where fines are not imposed as a part of the penalty; but it seems clear to us that the legislature has not done so, but that it has given the right only where a fine is imposed as a part of the penalty, and even then the order or judgment of the court must provide, for imprisonment as part of its finding, and be made part of the record.

We think the effect of the provisions is that where a fine is imposed by the court, the imposition of such fine re-

suits in making the costs also a part of the sentence; and the awarding of this writ for the collection of such costs, amounts to an order or direction of the court saying that such writ shall not issue.. It is certainly an easy and convenient method by which the court may determine when the writ shall and when it shall not issue; and that is a matter left, we think very properly, within the discretion of the court, to be exercised according to the circum stances of the case it may have to deal with; so also the court may, in its discretion, adjudge that a party may be confined until the fine and costs are paid, and in such case no writ other than a mittimus setting forth the judgment, need issue. The court did not issue a mittimus. The court did not order an execution to issue. It is provided that a judgment against the defendant for costs shall follow in all cases upon a conviction; but such judgment, unless made a part of the sentence, in the manner above pointed out, we think has no higher dignity or greater force than an ordinary judgment for money in a civil action.

If then there are any laches or lack of authority in the statutes to help out or aid in confining this minister in jail, we do not think it would authorize us to put a strained construction upon this statute as against the right to personal liberty. As before stated, the right to imprison in a given case should be clear and explicit; otherwise it should be held to not exist.

We think, however. that authority for the issuing of an ordinary fieri facias upon a judgment which is in effect a civil judgment, as we hold this judgment for costs to be, may be found in some sections of the statutes. Even the entertaining of serious doubts upon this question is sufficient to require the court, under the rules governing the construction of penal statutes. and those to be applied in favor of personal liberty, to take the view that imprisonment is not authorized, and upon the whole we conclude that this is a correct construction of these various statutes.

To deny this writ, would be to enforce this incomplete order or unauthorized execution; to return this minister to jail. would be to inflict upon him imprisonment and disgrace simply because he is poor and unable to pay, which it is conceded, can avail nothing in collecting these costs; to remand him to the custody of the sheriff, would be to start him in search of a remedy which he would never find. while to discharge him from custody, does not set aside the penalty, nor forgive the debt which will still confront. him and will continue so to do, until paid. The relator is discharged. and the cost of these proceedings is adjudged against the state.